ANNIE BINDER *vs.* BOSTON ELEVATED RAILWAY COMPANY.

Suffolk.  December 6, 1928. — January 4, 1929.

Present: RUGG, C.J., CROSBY, CARROLL, WAIT, & SANDERSON, JJ.

*Negligence,* Street railway.

At the trial of an action of tort for personal injuries against a street railway company, there was evidence that the plaintiff got on a street car of the defendant through the front door, which was closed after him; that, while he was on the platform where the motorman stood, and without the sounding of a gong or knowledge by the plaintiff that the car was about to start, it started with a sudden jerk, "a very bad jerk," the like of which the plaintiff had never seen before; and that the plaintiff fell before he had an opportunity to take hold of anything. There was no evidence that the car started with more violence than is usual. There was admitted in evidence a rule of the defendant forbidding the starting of a car until the authorized signals were received or without the sounding of the gong. The trial judge ordered a verdict for the defendant. *Held,* that

(1) No evidence of negligence on the part of the motorman appeared in the manner of starting the car;

(2) The rule of the defendant was not for the benefit of passengers in the position of the plaintiff, and he could not rely on a violation of it as proof of negligence in the circumstances;

(3) The verdict properly was ordered for the defendant.

TORT for personal injuries. Writ dated January 14, 1925.

Material evidence at the trial in the Superior Court before *Whiting,* J., is described in the opinion. At the close of the plaintiff's evidence the judge ordered a verdict for the defendant, and the plaintiff alleged an exception.

*J. H. Vahey,* (*P. Mansfield* with him,) for the plaintiff.

*J. E. Hannigan,* for the defendant.

CROSBY, J.   The plaintiff testified that, accompanied by her husband, on Christmas day, 1924, at about half past eleven in the evening, she went to the corner of Harvard Street and Commonwealth Avenue, in Boston, to take a Dudley Street car; that when the car came to a stop and the motorman opened the front door, she stepped upon the platform and before she had reached a seat the car started with a sudden jerk, causing her to fall and break her leg. She further testified that when she fell she was inside the door on the platform where the motorman was; that the door did not push her forward when it was closed or cause her to fall; that she did not know that the car was going to start; that the gong was not sounded.   In describing the starting of the car she testified that it was "a very bad jerk; that she had never seen anything like it before"; that she had no opportunity to take hold of anything before she fell.   Although the plaintiff had not stepped up into the car where the seats for passengers are located, she was upon the platform where the motorman stood and the doors had been closed.

It is a matter of common knowledge that electric cars cannot be started without occasional jerks and jolts.   There is no evidence that this car started with more violence than is usual.   It has often been held that the starting of an electric car in the manner described is not evidence of negligence on the part of the motorman.   *Martin* v. *Boston Elevated Railway,* 216 Mass. 361.   *Anderson* v. *Boston Elevated Railway,* 220 Mass. 28, 32, and cases cited.   *O'Neill* v. *Boston Elevated Railway,* 248 Mass. 362.   *Gollis* v. *Eastern Massachusetts Street Railway,* 254 Mass. 157.

It is settled in this Commonwealth that under ordinary circumstances it is not negligence for a conductor to give the starting signal after the passenger is fully and fairly on the car, and that ordinarily it is not necessary for the safety of a passenger in normal physical condition that the car should be delayed until he is seated.   *Flanagan* v. *Boston Elevated Railway,* 216 Mass. 337.   *Martin* v. *Boston Elevated Railway, supra.*

It is the contention of the plaintiff that the car was started in violation of that part of Rule 95 of the defendant, which is as follows: "Starting car.  (a) Never start a car until authorized signals have been received, nor without sounding gong." This rule is not for the benefit of passengers fully within the car.  The signals therein referred to are given by the conductor to the motorman that he may be informed that the car may with safety to passengers proceed upon its way. If the gong in the present case was not sounded, that circumstance could not be relied on by the plaintiff.  See *Gagnon* v. *Boston Elevated Railway*, 205 Mass. 483.

As there was no evidence of negligence on the part of the defendant, the judge rightly directed a verdict in its favor. The cases cited by the plaintiff are easily distinguishable in their facts from the case at bar.

*Exceptions overruled.*