15057

POLIAKOFF v. SHELTON

(8 S. E. (2), 494)

January, 1938.

Order of Judge Oxner follows:

At the conclusion of the evidence, defendant made a motion for a directed verdict which, by consent of counsel, was taken under advisement, and argued before me on January 23, 1939. Briefly stated, said motion was upon the ground that the plaintiff failed to show any actionable negligence on the part of the defendant.

Most of the testimony related to the nature and extent of the alleged injuries sustained by plaintiff. The testimony as to how the alleged injury occurred is unusually brief and incomplete. The testimony offered by the plaintiff showing how her injury occurred may be concisely stated as follows: Defendant operated a bus line between Greenville and Anderson. Plaintiff purchased a ticket at Greenville and at the time of her injury was a passenger on said bus between Greenville and Anderson. While the bus was quietly traveling along the highway and nothing unusual happened, a suitcase fell from above and struck the plaintiff upon her left shoulder. The plaintiff was sitting at the time on the bus in a seat adjoining the aisle and her brother was sitting next to her by the window. She states that no one was standing or handling baggage at that time. Plaintiff states that she does not know where the suitcase came from except that it came from "above". This is substantially all the testimony offered by the plaintiff upon the question as to how her injury occurred. The record is entirely silent as to whether the bus contained a rack on the inside for holding baggage; as to whether any baggage was brought into the bus, and if so, when; as to whether any baggage on the inside of the bus was under control of the bus driver or the passengers; as to who placed the suitcase which fell upon her in the bus, how it was placed, or what caused it to fall from the rack, if there was a rack. In short, the only fact that we have is that a suitcase fell and struck her on the shoulder.

It is well settled in this, as well as other jurisdictions, that a carrier owes to a passenger the highest degree of care. It is further well settled that negligence is not presumed from the bare fact that a passenger has been injured while being transported by the carrier. The correct rule in South Carolina is stated in *Anderson v. South Carolina & G. Railroad*, 77 S. C., 434, 58 S. E., 149, 150, 122 Am. St. Rep., 591, as follows: "According to the rule in this state, there is no pre-

sumption of negligence on the part of the carrier from the bare fact that a passenger has been injured while on the carrier's train, but that such presumption does arise on proof of such injury as the result of some agency or instrumentality of the carrier, some act of omission or commission of the servants of the carrier, or some defect in the instrumentalities of transportation."

Illustrative of this rule, it was held in the foregoing case that the presumption of negligence does not apply to injury from acts of fellow passengers without knowledge of the existence of the danger or of the facts and circumstances from which the danger may be reasonably anticipated.

The first question for determination is whether or not under the foregoing rule there is any presumption of negligence on the part of the carrier from the facts disclosed by the testimony. There is no testimony that the suitcase in question was brought into the bus by any agents of the defendant and there is no testimony that this suitcase was under the control of the carrier. Under these circumstances, the injury did not result from an agency or instrumentality of the carrier, nor in some defect in the instrumentalities of transportation, and there is no testimony that it resulted from some act on the part of the servant of the carrier. It seems to me clearly under the foregoing rule that the presumption could not apply in this case. While there is no case directly in point in South Carolina where this question is involved, it has been uniformly held in other jurisdictions, as disclosed by the authorities hereinafter referred to, that there is no presumption of negligence in a case of this kind. The next question for determination is whether or not there is any evidence of negligence on the part of the defendant, and in the determination of this issue, I am not unaware of the fact that negligence may be proved by circumstantial, as well as direct, evidence. But there must be some testimony from which negligence may be reasonably inferred. The doctrine of *res ipsa loquitur* does not prevail in South

Carolina and no supporting authority is necessary for this statement.

The case of *Creahan v. Pennsylvania Railroad*, 123 Pa. Super., 268, 187 A., 51, is very similar in facts. The Court states the facts as follows: "Plaintiff was injured while a passenger for hire in a coach on one of defendant's trains by the falling of a satchel from a rack over her head. The bag was a small one which had been placed in the rack by a fellow passenger and contained only a few articles of wearing apparel and toilet articles intended for overnight service. She entered the coach in Pittsburgh, and the train had proceeded a few miles when, while the train was rounding a curve, the satchel became dislodged and fell upon her head. * * * She neither gave nor furnished any evidence to indicate that there was anything defective or of improper construction in the rack, or that the train was operated in a negligent or unusual manner. There was no evidence of failure upon part of any of the defendant's agents or employees to inspect the baggage in the rack. In short, the plaintiff relied for proof of negligence solely upon the fact that the satchel did fall and that she was injured as a result of being struck by it."

After stating the facts, the Court in part said:

"While there is no evidence in the case indicating that the baggage was not carefully placed in the rack in a secure position other than the fact that it fell, if we assume that the bag was not securely placed in position, it was a fellow passenger, and not the carrier, who placed it, and it was he who was primarily liable for any consequences that may have resulted. The carrier having provided proper equipment for the accommodation of hand luggage, its responsibility with relation to the location of the baggage extended only to the duty of making a proper inspection. The fall of the baggage may have been due to any of many causes. It was incumbent upon the plaintiff to show that the dislodgment of the bag was due to some cause which ought to

have been foreseen by the carrier. This she failed to do.
\* \* \*

"The difficulty with plaintiff's case is that she tried it upon the theory that since she was a passenger for hire and was injured, the onus of rebutting a presumption of negligence was cast upon the defendant. Such is not the law unless facts are shown connecting the injury with failure of equipment or the operating processes of the carrier as we have more fully shown above."

It will be observed from the reading of the foregoing case that the rule in Pennsylvania was the same as ours as to the presumption where the injury resulted from something connected with the means or appliances of transportation. But the Court held that the presumption did not apply under the above facts.

To the same effect is the case of *Wade v. North Coast Transportation Company,* 165 Wash., 418, 5 P. (2d), 985. It was there held that no negligence was shown from proof of the fact that an infant was injured by the fall of a suitcase from rack in motorbus. The suitcase fell when the bus was turning from one street into another.

In *Morris v. New York Central R. Co.,* 106 N. Y., 678, 13 N. E., 455, the plaintiff, while a passenger, was injured by a wringer falling upon him from the rack above the seat. There was nothing extraordinary about the parcel, or its position in the rack, and nothing to attract particular attention to it, and it was not noticed by the servants of the carrier. The Court held that a nonsuit should have been granted.

In *Whiting v. New York Central & H. R. R. Co.,* 97 App. Div. 11, 89 N. Y. S., 584, 585, passenger was injured by a valise falling from a rack over her head. The Court said:

"There was no evidence tending to indicate that the satchel was not securely placed in the first instance, or that at any time before it fell there was anything in its position to indicate that it was likely to fall. The fall was not occasioned by any sudden or unusual motion of the car. \* \* \*

"There being nothing extraordinary about either the satchel itself or its position in the rack to hold the defendant liable for negligence on mere proof that at some time in the course of a long journey, while the train was in ordinary motion, the balance became disturbed, so that the satchel was caused to fall, would be to hold the defendant liable as an insurer."

In speaking of a similar situation, the Court, in the case of *Louisville, etc., R. Co. v. Rommele,* 152 Ky., 719, 154 S. W., 16, 17, Ann. Cas., 1915-B, 267, said:

"The evidence shows that the conductor did not see the package in the rack, or have his attention called to its presence, and there is no evidence even tending to show that there was anything in the size or appearance of this package, or the manner in which it was placed in the rack, to attract attention or to put the conductor on notice that it was not a suitable package to put in the rack, or to indicate that the motion of the car might cause it to fall, or that carrying it in the rack would probably result in injury to a passenger; on the contrary, we would say that it was just that sort of package in size, appearance, and weight for which racks in passenger cars are intended. With the evidence in this condition, we think the Court should have directed a verdict in favor of the company.

"If the servants in charge of the car, or whose duty it is to look after the safety and comfort of passengers, see, or have opportunity in the performance of their duties to see, a package or bundle in a rack, and it is of such size or appearance, or is so placed in the rack as that a prudent person in the exercise of ordinary care might reasonably anticipate that the movement of the car would cause it to fall out, it is the duty of the servants named to remove it from the rack or secure it in some way, and if they fail to do this, and a passenger is injured by the package falling from the rack, the carrier will be liable. But if a package or bundle placed in a rack is of a size and appearance suitable to be placed in the rack, and there is nothing in the manner in

which it is placed in the rack to cause a prudent person exercising ordinary care to anticipate that it might fall out, the carrier will not be liable."

While the foregoing authorities, which clearly sustain the contention of defendant, are not binding upon this Court, they are persuasive and I think sound in principle. There is no decision in South Carolina bearing directly upon the question involved. I have been able to find no case where a recovery has been allowed by any Court under facts similar to those here involved.

One of the best reasoned cases which I have been able to find on the presumption of negligence is the North Carolina case of *Saunders v. Norfolk & W. Railway Company,* 185 N. C., 289, 117 S. E., 4, 29 A. L. R., 1258. It was there held that the mere fall of an open window in a railroad car, to the injury of a passenger who took a seat beside it when entering the car, is not sufficient to establish actionable negligence on the part of the railway company. The Court said that there was no definite evidence as to what caused the window to fall or as to who raised the window. The Court said that it was impossible to tell whether the fall was attributable to a defect in the window, or to the failure of the person who raised it to secure it in the usual way. The facts in that case, of course, are much stronger in favor of the plaintiff than the facts in the instant case. It could have been more plausibly contended in that case that the window was an instrumentality of the carrier. While the case is not directly in point, the discussion of the principles involved by the Court is very enlightening.

Recovery was allowed in South Carolina from the falling of a window in the case of *Bunch v. Charleston & W. C. Railway,* 91 S. C., 139, 74 S. E., 363. There the window was raised by a servant of the carrier and the latch was found to be in a defective condition. It may not be amiss to state that the cases involving the fall of a window are not at all controlling in this case, because the window belongs

to the carrier, whereas the suitcase belongs to a fellow passenger.

If the testimony showed in this case that it was the rule or custom of the bus company to place the baggage in the racks on the inside of the bus; that the passengers had nothing to do with it; and that the baggage was removed by the driver of the bus, while not undertaking to decide that such evidence would be sufficient, it could more plausibly be argued that the baggage being handled entirely and under control of the carrier, there would be some evidence of negligence.

The Court cannot take judicial notice of how baggage is handled by a bus company, and, as a matter of fact, it may be and probably is handled one way by one bus company and another way by some other bus company.

What caused this suitcase to fall? Assume that there was a rack in this bus which was used to place baggage in, did a fellow passenger shortly before this occurrence undertake to handle some baggage of his thereby causing the suitcase in question to be left in an unsafe position with no opportunity on the part of the driver to observe same? The fall of the suitcase could have been brought about through numerous causes disconnected from any negligence on the part of the driver of the bus. This Court cannot speculate or in-indulge in imagination as to what caused it to fall. It is true that the law imposes upon the carrier the duty to make a reasonable inspection, but the record in this case is wholly silent as to whether any inspection was made, and, if so, whether the circumstances were such that a reasonable inspection would have disclosed that this suitcase might have fallen from the natural movement of the bus. This Court cannot assume that a reasonable inspection would have disclosed the precarious placement, if there was any, of this baggage.

Attorney for plaintiff has cited the case of *Durst v. Railway Company,* 130 S. C., 165, 125 S. E., 651. There the in-

jury was caused by the falling of a lamp from the hands of one of the trainmen. The situation presented is wholly unlike the case at bar. Counsel further cites several cases where injury resulted from a fellow passenger stumbling or falling by coming in contact with baggage left in the aisle of dimly lighted Pullman cars. These cases are not applicable.

After most mature consideration, I am satisfied that the motion for directed verdict should be granted.

It is ordered that the motion for directed verdict be, and the same is hereby granted, and the clerk of this Court is directed to enter up judgment for the defendant, and the verdict of the jury in favor of the plaintiff is set aside.

*Mr. Leon W. Harris,* for appellant,

*Messrs. Henry P. Willimon* and *Harold Major,* for respondent,

April 8, 1940.

The opinion of the Court was delivered by MR. E. H. HENDERSON, ACTING ASSOCIATE JUSTICE.

The defendant, W. M. Shelton, owns and operates the Red Top Bus Line, which is a common carrier of passengers for hire.

On June 28, 1936, the plaintiff, Mrs. Rachael Poliakoff, purchased a ticket for transportation on the defendant's line

from Greenville to Anderson. After entering the bus at Greenville, and as it was proceeding in the usual manner along the highway, a large suitcase fell on her shoulder as she was sitting on the seat next to the aisle, and injured her.

The action was begun on May 1, 1937, in the Court of Common Pleas for Anderson County, and was tried before his Honor, Judge G. Dewey Oxner, and a jury.

The plaintiff's brother, who was sitting on the same seat with her, testified that he did not observe the baggage over him, and that it fell on Mrs. Poliakoff's shoulder; that there were many passengers on the bus; that the suitcase fell from above somewhere; that he did not know who put it there, nor who picked it up after it fell.

Mrs. Poliakoff testified that the suitcase fell on her shoulder while she was sitting down, and while the bus was running; that she did not see anyone put the suitcase in the bus, and that she did not know to whom it belonged; that no one around her was handling baggage at the time; that it did not fall from any person's hands; that no one was standing near enough to have his hands on the suitcase when it fell; that everything was quiet; that it fell from above her somewhere; and that she only knew that it fell on her.

This is all of the very brief evidence as to how the injuries to the plaintiff occurred.

The defendant offered no testimony, and at the conclusion of the evidence of the plaintiff moved for a directed verdict in his favor on the ground that there was a total failure of proof of any acts of negligence on the part of the defendant or its servants.

With the consent of counsel for both sides his Honor, Judge Oxner, reserved his decision, to be announced later. After the arguments and the charge the case was submitted to the jury, which found a verdict in favor of the plaintiff for $500.00 actual damages.

Thereafter, the question was fully argued before Judge Oxner, and on January 31, 1939, he passed an order grant-

ing the motion for the direction of a verdict in favor of the defendant and the setting aside of the verdict of the jury. The order of Judge Oxner will be set out in the report of the case.

The appeal is by the plaintiff from this judgment.

Certain underlying principles bearing upon cases of this sort have been clearly settled.

"Common carriers for hire owe the highest degree of care to their passengers for safe transportation from one point to another." *Belcher v. Atlantic Coast Line Railroad Co.,* 175 S. C., 9, 177 S. E., 890.

"According to the rule in this Satte, there is no presumption of negligence on the part of the carrier from the bare fact that a passenger has been injured while on the carrier's train." *Anderson v. South Carolina Railroad Co.,* 77 S. C., 434, 58 S. E., 149, 150, 122 Am. St. Rep., 591.

"Such presumption does arise on proof of such injury as the result of some agency or instrumentality of the carrier, some act of omission or commission of the servants of the carrier, or some defect in the instrumentalities of transportation." *Anderson v. South Carolina Railroad Company, supra.*

See, also, *Sutton v. Southern Railway,* 82 S. C., 345, 64 S. E., 401; *Porter v. Davis, Director General,* 118 S. C., 153, 110 S. E., 121; *Horne v. Southern Railway,* 186 S. C., 525, 197 S. E., 31, 116 A. L. R., 745.

The question before us for determination then is: Was there any evidence in the case that the plaintiff's injuries resulted from an agency or instrumentality of the carrier or from an act of omission or commission by the carrier's servants, or some defect in the instrumentalities of transportation?

Little can be added to the very clear decision of Judge Oxner. As pointed out by him the evidence does not even show that there was a rack; whether the passengers or the

bus driver had control of the baggage; who put the suitcase in the bus, or when it was brought in.

There is absolutely no evidence of a defective rack, or that the carrier's employees knew the suitcase was in the bus; nor of any lack of inspection on their part, or whether an inspection would have disclosed that the baggage was in an unsafe position. Nor is there evidence that the carrier usually brought the baggage into the bus, or carried it out.

Under these circumstances, we think that the Circuit Judge correctly held that the testimony failed to show that the plaintiff was injured by an agency or instrumentality of the carrier, or as a result of a defect in the instrumentalities of transportation.

Was there evidence of some act of omission or commission of the servants of the carrier, so as to authorize a presumption of negligence?

A case similar to this has not arisen in South Carolina. Judge Oxner, in his order, cites the decisions of other states where pieces of baggage have fallen from racks, and those cases hold that no evidence of negligence on the part of the defendants appeared. *Creahan v. Pennsylvania Railroad,* 123 Pa. Super., 268, 187 A., 51; *Wade v. North Coast Transportation Company,* 165 Wash., 418, 5 P. (2d), 985; *Morris v. New York Central Railroad Company,* 106 N. Y., 678, 13 N. E., 455; *Whiting v. New York Central Railroad Company,* 97 App. Div., 11, 89 N. Y. S., 584; *Louisville, etc., R. Co. v. Rommele,* 152 Ky., 719, 154 S. W., 16, Ann., Cas., 1915-B, 267.

Judge Oxner properly held that while negligence may be proved by circumstantial evidence, yet the doctrine of *res ipsa loquitur* does not prevail in South Carolina; and the Court cannot speculate as to how the suitcase came to fall, as its fall may have been the result of an act of a fellow passenger, or it may have occurred in many other ways.

In the circuit order it is shown how this case is different from the cases of *Bunch v. C. & W. C. Railway*, 91 S. C., 139, 74 S. E., 363 and *Durst v. Southern Railway*, 130 S. C., 165, 125 S. E., 651.

Other cases relied upon by the appellant are different, also.

The plaintiff in the case of *Caldwell v. Pullman Company*, 132 S. C., 321, 128 S. E., 504, 505, stumbled over a suitcase which was partially projecting into the aisle of a Pullman car, as she arose early, and while the car was dimly lighted. The Court in that case said: "The proof shows that either the conductor or the porter could have seen the valise. The conductor was asleep, and the porter did not see it. It was placed in the car at Richmond by the porter, and the owner went to sleep. The jury could infer from the evidence that it was placed improperly."

In the case before us there was no evidence that the carrier's servants could have discovered the insecure position of the suitcase, nor is there any evidence that the bus driver or other employee of the defendant placed the baggage in the bus.

In *Forbes v. Pullman Company*, 137 S. C., 433, 135 S. E., 563, 564, the plaintiff entered a Pullman car in the early morning. "She found the coach so dark, according to her testimony, that it was impossible for her to see the suit case left in the aisle by one of her fellow passengers. The employees of the company knew, when they invited her to enter the coach as a passenger, that the coach was dark, and they knew also that the aisle of a Pullman coach is frequently obstructed by luggage placed therein by passengers. No employee of the company accompanied the plaintiff to clear the aisle for her, and she testified that the aisle was not lighted so that she could see the obstruction for herself. While she was walking down the aisle trying to locate her seat without the assistance of any employee of the company, the train was put in motion, and she fell over the suit case in the aisle and sustained injuries."

In that case there was proof of negligence on the part of the carrier's servants.

The plaintiff in the case of *Hall v. Southern Railway,* 162 S. C., 260, 160 S. E., 584, 588, sustained injuries by slipping on a banana peel, while walking down the aisle to get off the train. The opinion states that the employees of the railroad company "in effect admitted that it was their duty to keep the place where the passengers had to walk clear of such things. It was their contention that no such thing was there. There was also testimony tending to show that the railroad authorities knew that it was customary for passengers to eat bananas and throw the peels on the floor, where the passengers had to walk, practically every day, especially so on excursion trains, such as the train in question was. * * * A reasonable inference to be drawn from the testimony in the case at bar is that a banana peel in the aisle of a passenger coach is not an unexpected peril, but is an expected peril and danger."

In the case before us there was no evidence of knowledge by the carrier's servants of a dangerous situation.

We are of the opinion that the evidence in the present case is not sufficient to show an act of omission or commission on the part of the defendant's servants, from which a presumption of negligence could arise.

Under the evidence we do not see how it could be held that the defendant is liable, without holding that a carrier is an absolute insurer of the safety of its passengers in every instance, and that the bare fact that an injury occurs on a bus entitles the passenger to recover, regardless of negligence on the part of the carrier.

It follows that his Honor, Judge Oxner, properly directed a verdict in favor of the defendant, and the judgment of the Circuit Court is affirmed.

Judgment affirmed.

MR. CHIEF JUSTICE BONHAM and MESSRS. JUSTICES CARTER and FISHBURNE and MR. ACTING ASSOCIATE JUSTICE J. HENRY JOHNSON concur.